IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DENNIS A. LOTT                                                                                           PLAINTIFF

V.                                        Civil No. 3:14-cv-03099-MEF

CAROLYN W. COLVIN, Commissioner,
Social Security Administration                                                              DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Dennis Lott, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff filed his application for DIB on December 5, 2011, alleging an onset date of May 10, 2010, due to attention deficit hyperactivity disorder ("ADHD"), cognitive disorder, depression, anxiety, vision problems, carpal tunnel syndrome, and rheumatoid arthritis. The Commissioner denied his application initially and on reconsideration. The Administrative Law Judge ("ALJ") held an administrative hearing on January 10, 2013. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff possessed a graduate level degree. He had past relevant work ("PRW") experience as a mechanic and a Licensed Professional Counselor. Tr. 212, 219-227, 250-257.

On August 22, 2013, the ALJ concluded that Plaintiff's dysthymic disorder and visual impairments were medically determinable. However, he ultimately determined that the Plaintiff did not have a severe impairment. Tr. 58. Accordingly, the ALJ denied the Plaintiff's application for benefits. Tr. 64.

Subsequently, Plaintiff filed this action. ECF No. 1. This matter is before the undersigned by consent of the parties. ECF No. 5. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 9, 12.

## II.     **Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982) (en banc) (abrogated on other grounds); 20 C.F.R. § 404.1520(a)(4)(v).

### III. <u>Discussion</u>:

Of particular concern to the undersigned is the ALJ's step two determination that the Plaintiff has no severe impairments. At step two, a claimant has the burden of providing evidence of functional limitations in support of their contention of disability. *Baker v. Colvin*, July 22, 2015

(8th Cir. 2015); *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); 20 C.F.R. § 404.1521(a)). "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)).

The record reveals that the Plaintiff suffers from a level of cognitive impairment that inhibited his ability to remember client names, remember the location of client counseling sessions, differentiate between clients with similar names, and complete the necessary paperwork for his job as a school based counselor. This impairment was so significant that it resulted in his loss of employment in December 2011. Records from the Washington Regional Senior Health Center, Dr. Shahid Insef and his nurse practitioner Brianna Verheyen at the Emologic Clinic, the testimony of a former secretary Jane Henley, and the written statement of his supervisor Shawna Burns support the Plaintiff's allegations. Tr. 100-108, 517-535, 587, 596, 598-605, 607-609.

There is also evidence to suggest that the Plaintiff's memory impairment interfered with his daily life. Misplacement of personal items, failure to complete projects, and getting lost while driving familiar routes were among the problem areas reported. Tr. 80. As a result, he required reminders and the use a GPS device whenever he drove. The Plaintiff also testified that he could no longer pilot his own plane, following an incident where he became disoriented, almost landed on the wrong runway, and ultimately landed the wrong way on the correct runway. Tr. 94-95.

Brianna Verheyen, nurse practitioner to Dr. Shahid Insef, completed a medical source statement documenting moderate limitations in the following areas: 1) remembering locations and work-like procedures; 2) maintaining attention and concentration for extended periods, working

4

in coordination with or proximity to others without being unduly distracted by them; and, 3) completing a normal workday or work week without distractions from psychologically based symptoms. The ALJ improperly dismissed this assessment, stating that Nurse Verheyen was not an acceptable source because she is a nurse practitioner. However, other sources, including nurse practitioners, may provide insight into the severity of an impairment and its effect on the claimant's ability to function. *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1); *see also* SSR 06−3p. Further, we also find that the treating relationship Nurse Verheyen had with the Plaintiff and the fact that she worked directly under his treating psychiatrist weigh in her favor. 20 C.F.R. § 404.1513(d)(2)(i); *See Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir.2006) (allowing nurse practitioner, who was working as a part of a medical team with a doctor, to be treated as a treating source). As such, we find that remand is necessary to allow the ALJ to reconsider the severity of the Plaintiff's impairment as well as the assessment of Nurse Verheyen.

In determining the Plaintiff's mental impairment to be non-severe, the ALJ relied on RFC assessments completed by two non-examining consultants. Tr. 550-562, 576-580. However, the record also contains mental evaluations completed by two consultative examiners. Tr. 385-389, 536-541, 613-622. In February 2011, Dr. Terry Efird diagnosed the Plaintiff with anxiety disorder not otherwise specified and suggested that he undergo formal cognitive function testing to determine his level of cognitive impairment. In March 2012, Dr. Charles Nichols diagnosed the Plaintiff with dysthymic disorder. Tr. 536-541. Then, in June 2013, Dr. Nichols reassessed the Plaintiff with worsening depression, diagnosing both major depressive disorder and dysthymic disorder. Tr. 613-622. On both occasions, Dr. Nichols noted that the Plaintiff's memory difficulties were "most likely secondary to affective disruption." These diagnoses correspond with the diagnoses of fatigue, depression, stress, and cognitive impairment assigned by Dr. Insef, Nurse

5

Verheyen, and the Plaintiff's treating physician, Dr. Corey Jackson. Tr. 511-532, 574-575, 611-612. In fact, the Plaintiff's impairments were significant enough to warrant prescriptions for Cymbalta, Abilify, and Ritalin. Accordingly, remand is necessary so that the ALJ may reevaluate the severity of the Plaintiff's depression and anxiety. Further, because all examiners agreed that the Plaintiff's mood disorders directly affect his cognitive impairment, the ALJ should order a formal neuropsychological evaluation to include a full battery of tests to fully assess the Plaintiff's level of cognitive functioning.

The record also reveals physical impairments to include decreased corrected visual acuity in his right eye of 20/80, dense posterior capsular opacification of the right fundus of the right eye, a possible cataract on his left eye, carpal tunnel syndrome in his right upper extremity status post release surgery, and pain and limitations in his left hand consistent with possible carpal tunnel syndrome. As these impairments are supported by the overall record, on remand, the ALJ is also directed to obtain an RFC assessment from Dr. Jackson to ensure all of the Plaintiff's work-related limitations are included in his RFC determination. If Dr. Jackson is unable or unwilling to complete an RFC assessment, then the ALJ should order a consultative physical examination to assess any physical limitations imposed by these impairments.

**IV.    Conclusion**:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 29th day of January, 2016.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE